1  Richard D. McCune, State Bar No. 132124
   rdm@mccunewright.com
2  David C. Wright, State Bar No. 177468
   dcw@mccunewright.com
3  Jae (Eddie) K. Kim, State Bar No. 236805
   jkk@mccunewright.com
4  **McCuneWright llp**
   2068 Orange Tree Lane, Suite 216
5  Redlands, California  92374
   Telephone:  (909) 557-1250
6  Facsimile:  (909) 557-1275

7  Joseph G. Sauder, PA State Bar No.82467*
   JGS@chimicles.com
8  Matthew D. Schelkopf, PA State Bar No. 89143*
   MDS@chimicles.com
9  **Chimicles & Tikellis LLP**
   One Haverford Centre
10 361 West Lancaster Avenue
   Haverford, Pennsylvania  19041
11 Telephone:  (610) 642-8500
   Facsimile:  (610) 649-3633
12 *Pro Hac Vice* applications to be submitted

13 Attorneys for Plaintiff and Putative Class

14

15          **IN THE UNITED STATES DISTRICT COURT**

16       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17  ELIZABETH MENDOZA, on behalf of herself and all others similarly situated, | Case No.: |
| 18  Plaintiff, | **CLASS ACTION COMPLAINT** |
| 19  v. | 1.  Violation of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); |
| 20  HYUNDAI MOTOR COMPANY, LTD, HYUNDAI MOTOR AMERICA, INC., and DOES 1 through 10, Inclusive, | 2.  Violation of California Unfair Competition Laws (Cal. Bus. & Prof. Code § 17200); |
| 21 | 3.  Violation of California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); |
| 22  Defendants. | 4.  Breach of Express Warranty; |
| 23 | 5.  Breach of Implied Warranty; 6.  Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*); |
| 24 | 7.  Common Law Fraud; |
| 25 | 8.  Breach of the Duty of Good Faith and Fair Dealing; |
| 26 | 9.  Violation of the Song-Beverly Act – Breach of Implied Warranty (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*) |
| 27 | |
| 28 | **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT
CASE NO.:

## PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Elizabeth Mendoza brings this action against Defendants Hyundai Motor Company, Hyundai Motor America, and Does 1 through 10 (collectively "Defendants"), by and through her attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff on behalf of herself and a class of current and former owners and lessees with Theta II 2.4 liter (a/k/a "G4KC") gasoline direct injection engines (the "Theta II Engine") installed in model years ("MY") 2011 and 2012 Hyundai Sonata vehicles (the "Class Vehicles").[1]

2.      This action arises from Defendants' failure, despite their longstanding knowledge of a material design defect, to disclose to Plaintiff and similarly situated consumers that the engines in the Class Vehicles contain, *inter alia*, defective connecting rod bearings and insufficient channels of engine lubrication.  As explained below, when the connecting rod bearings begin to fail, metal debris from the defective rod bearings is transported throughout the Class Vehicles' engines via contaminated engine oil.  This defect – which typically manifests itself during and shortly after the limited warranty period has expired – will inevitably cause the Class Vehicles to experience catastrophic engine failure.  Further, due to insufficient channels of lubrication in the Class Vehicles' engines, the time it takes the Class Vehicles to experience catastrophic engine failure is accelerated.

3.      Significantly, the presence of defective connecting rod bearings and insufficient lubrication channels poses a safety risk to the operator and passengers of the Class Vehicles.  The failure of the connecting rod bearings can cause complete and catastrophic engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, and the insufficient lubrication channels accelerates the time it takes the Class Vehicles to experience catastrophic engine failure.  This exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death.  As discussed further herein, numerous

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

owners and lessees of the Class Vehicles have experienced engine damage and catastrophic failure while operating the Class Vehicles, thus placing themselves and those around them in immediate danger.

4.     Not only did Defendants actively conceal the fact that particular components within the Class Vehicles' engines are defective, they did not reveal that the existence of the defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described herein.

5.     Hyundai has long been aware of the defect described above.  Yet, notwithstanding its longstanding knowledge of this design defect, Hyundai has routinely refused to repair the Class Vehicles without charge when the defect manifests.  Indeed, in many cases Hyundai even has refused to disclose the existence of the defect when Class Vehicles displaying symptoms consistent with the defect are brought in for service, instead choosing to ignore the defect until they have caused significant mechanical problems necessitating costly repairs.

6.     Many other owners and lessees of the Class Vehicles have communicated with Defendants and/or Defendants' agents to request that they remedy and/or address the defect and/or resultant damage at no expense.  Defendants have routinely failed to do so.

7.     Hyundai has also refused to take any action to correct this concealed design defect when it manifests in the Class Vehicles outside of the warranty period.  Since the defect can manifest shortly outside of the warranty period for the Class Vehicles – and given Defendants' knowledge of this concealed, safety related design defect – Hyundai's attempt to limit the warranty with respect to the engine defect is unconscionable and unenforceable here.

8.     Despite notice and knowledge of the defect from the numerous complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, including durability testing, Hyundai has not recalled the Class Vehicles to repair the engine defect, offered its customers suitable repairs or replacements free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses to repair the defect.

9.     As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money

-3-

CLASS ACTION COMPLAINT
CASE NO.:

and/or property and/or loss in value.  The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiff and other Class Members known of the defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

11.     Plaintiff is also informed and believes, and on that basis alleges, that as the number of complaints increased, and Class Members grew dissatisfied with the performance of the Class Vehicles, Defendants were forced to acknowledge that the Class Vehicles suffer from an inherent defect.

12.     As a result of the defect and the monetary costs associated with attempting to repair the defect, Plaintiff and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

13.     Accordingly, Plaintiff brings this action to redress Defendants' violations of California's consumer fraud statutes, and also seeks recovery for Defendants' breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and common law fraud.

**JURISDICTION**

14.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of California and throughout the United States.

**VENUE**

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district.  Additionally, there are one or more authorized Hyundai dealers within this district and Defendants have advertised in this district and have received substantial revenue

-4-

CLASS ACTION COMPLAINT
CASE NO.:

and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

**PARTIES**

**Plaintiff Elizabeth Mendoza**

17.     Plaintiff Elizabeth Mendoza ("Plaintiff") is a citizen of the State of California, and currently resides in Marina, California.

18.     On or about February 11, 2012, Plaintiff purchased a 2011 Hyundai Sonata with approximately 30,000 miles on the odometer.

19.     On or about October 27, 2014, with approximately 85,000 miles on the odometer, Plaintiff was driving when she heard a loud "knocking" noise emanating from the engine of her vehicle.

20.     Plaintiff then brought her vehicle into her local Hyundai dealer.  The dealer informed Plaintiff that one of the pistons in her engine had blown out.  Plaintiff then requested that the dealership repair her vehicle under warranty.  The dealer refused to make such repairs, informed Plaintiff that the repairs were not covered under her warranty, and instead offered to replace the engine in Plaintiff's vehicle for approximately $4,500.  Plaintiff declined the repairs.

21.     Plaintiff subsequently contacted a local mechanic to perform the repairs.  Plaintiff's vehicle necessitated an engine replacement at an out-of-pocket cost to her of $3,000.

22.     At all times relevant herein, Plaintiff adhered to Hyundai's recommended maintenance intervals.

23.     Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the engine defect, including, but not limited to, out of pocket losses associated with the engine defect and repairs and diminished value of her vehicle.

24.     None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff of the existence of the defect prior to, or any time after, her purchase.

**The Defendants**

25.     Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States.  Furthermore, Defendants design, develop,

-5-

CLASS ACTION COMPLAINT
CASE NO.:

manufacture, distribute, market, sell, lease, warrant, service, and repair passenger vehicles, including the Class Vehicles.

26.     Defendant Hyundai Motor Company, Ltd. ("HMC") is a South Korean corporation. HMC is the parent corporation of Hyundai Motor America, Inc.  HMC, through its various entities, designs, manufactures, markets, distributes and sells Hyundai automobiles in California and multiple other locations in the United States.

27.     Defendant Hyundai Motor America, Inc. ("HMA") is incorporated and headquartered in the State of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.  HMA is HMC's U.S. sales and marketing division, which oversees sales and other operations across the United States.  HMA distributes Hyundai vehicles and sells these vehicles through its network of dealers.  Money received from the purchase of a Hyundai vehicle from a dealership flows from the dealer to HMA.

28.     HMA and HMC sell Hyundai vehicles through a network of dealerships that are the agents of HMA and HMC.

29.     There exists, and at all times herein existed, a unity of ownership between HMC, HMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

30.     Upon information and belief, Defendant HMC communicates with Defendant HMA concerning virtually all aspects of the Hyundai products it distributes within the United States.

31.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the Theta II Engine as it relates to the engine defect within the Class Vehicles were performed exclusively by Defendants HMA and HMC.

32.     Upon information and belief, Defendants HMA and HMC developed the post-purchase owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

33.     HMA and HMC are collectively referred to in this complaint as "Hyundai" or "Defendants" unless identified separately.

34.     Hyundai engages in continuous and substantial business in California.

-6-

35.     The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such defendants by such fictitious names.  Each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the defendants designated herein as DOES when such identities become known.

36.     Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## CALIFORNIA LAW APPLIES

37.     It is appropriate to apply California law to the nationwide claims because California's interest in this litigation exceeds that of any other state.

38.     As discussed above, Defendant HMA is located in Fountain Valley, California and is the sole entity in the contiguous 48 U.S. states responsible for distributing, selling, leasing and warranting Hyundai vehicles.

39.     Hyundai's customer relations, engineering, marketing, and warranty departments are all located in HMA's Fountain Valley campus.  Hyundai's customer relations department is responsible for fielding customer complaints and monitoring customer complaints posted to Hyundai or third-party websites.  Hyundai's warranty and engineering departments are both responsible for the decisions to conceal the engine defect from Hyundai's customers, and for instituting a policy to systematically deny warranty coverage to those who experienced engine failure caused by the defect.

40.     Based on the foregoing, such policies, practices, acts and omissions giving rise to this Action were developed in, and emanated from, Defendants' headquarters in Fountain Valley, California. As detailed below, Hyundai also came to know, or should have come to know, of the engine defect through the activities of Hyundai divisions and affiliated entities located within California.

CLASS ACTION COMPLAINT
CASE NO.:

Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

**TOLLING OF STATUTES OF LIMITATIONS**

41.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the engine defect until shortly before this class action litigation was commenced.

42.     In addition, even after Plaintiff and Class Members contacted Defendants and/or their authorized dealers for vehicle repairs concerning the engine defect, they were routinely told by Defendants and/or through its dealers that the Class Vehicles were not defective.  As described below, the true cause of the premature and catastrophic failure is a defective connecting rod bearing and insufficient channels for engine oil lubrication.

43.     Defendants were and remain under a continuing duty to disclose to Plaintiff and the Members of the Class the true character, quality and nature of the Class Vehicles, that the connecting rod bearing and lubrication systems are based on poor designs, that they will require costly repairs, pose a safety concerns, and diminish the resale value of the Class Vehicles.  As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**FACTUAL ALLEGATIONS**

A.     **The Defective Engine Components within the Class Vehicles**

44.     Hyundai is a multinational corporation with over 75,000 employees worldwide.  Hyundai is currently the fourth largest automobile manufacturer in the world.

45.     The Theta II Engine (G4KC), which HMC used in the Class Vehicles, is a 2.4 liter engine that was manufactured by Hyundai Motor Manufacturing Alabama, LLC at its manufacturing plant in Montgomery, Alabama.

46.     The Theta II Engine is a 2.4 liter gasoline direct-injection ("GDI") fuel delivery system.  Hyundai states that "[t]his shorter, more direct path of fuel delivery, allows for greater control of the fuel mixture at the optimum moment, thus improving efficiency.  The fuel is injected by a camshaft-driven,

-8-

high pressure pump that operates at pressures up to 2,175 psi.  Direct injection also utilizes a higher than normal 11.3:1 compression ratio for increased power.  The pistons are 'dished' to increase combustion efficiency in the cylinder.  This powerplant delivers best-in-class fuel economy, best-in-class four-cylinder horsepower and best-in-class torque."

47.     As background, the Theta II Engines contained in the Class Vehicles use four reciprocating pistons to convert pressure into a rotating motion.  Gasoline is mixed with air in the combustion chambers of the engine.  To generate such rotating motion, a four-step sequence is used (the "Combustion Cycle").  First, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture is pulled into the combustion chamber.  Second, the compression stroke begins with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber.  Third, the power stroke begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crankshaft.  And fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving back up, forcing the exhaust gases out of the cylinder.  The exhaust valve then closes, the inlet valve opens, and the Combustion Cycle repeats itself.   A diagram of Combustion Cycle is below:



48.     The pistons are connected to the crankshaft via the connecting rod.  As the connecting rod moves up and down during the Combustion Cycle, this causes the crankshaft to rotate, ultimately

-9-

CLASS ACTION COMPLAINT
CASE NO.:

1  resulting in power to the drive wheels of the vehicle.  During this cycle, the crankshaft rotates many

2  thousands of times per minute within each connecting rod.  In order to reduce friction and prolong

3  longevity, this design utilizes a bearing placed between the connecting rod and crankshaft surfaces.  As a

4  result, the connecting rod bearings allow the crankshaft to rotate within the connecting rods during the

5  Combustion Cycle.  An exemplar diagram of the piston, connecting rod, connecting rod bearing and

6  crankshaft are shown below:



Figure 3-70.—Connecting rod bearings.

20      49.     When the Class Vehicles are in operation, engine oil is used to lubricate the piston,

21  cylinder wall, connecting rod bearings and other rotating and moving components as the piston moves

22  up and down through the four-stroke sequence.  Engine oil is necessary to reduce wear on moving

23  parts throughout the engine, improve sealing, and cool the engine by carrying away heat from the

24  moving parts.  Engine oil also cleans and transports contaminants away from the engine to the oil

25  filter.  Oil is pumped and pressurized throughout the engine by the oil pump.  The oil pump draws oil

26  from the oil pan, located underneath the piston and crankshaft.  The oil pump forces engine oil through

27  the oil filter and then through passages in the engine to properly lubricate and reduce friction in

28  internal moving engine components.  The oil then returns to the oil pan through small drainage holes

CLASS ACTION COMPLAINT
CASE NO.:

located throughout the engine where it will be recirculated by the oil pump.  Below is a diagram illustrating the typical path and channels of engine oil lubrication in an overhead cam engine:

**Engine Lubrication (Overhead Cam Shown)**



50.    The connecting rod bearings are also lubricated with engine oil in order to allow the crankshaft to rotate within the connecting rods.  A close up picture of functional connecting rod bearing is below:



CLASS ACTION COMPLAINT
CASE NO.:

51.     When the defect inherent in the connecting rod bearings manifests itself, the bearings begin to fracture.  As a result, large amounts of metal debris begin to accumulate in the engine oil.  As a result, the oil becomes so contaminated that the oil filter can no longer remove the plethora of metal debris.  This contaminated oil is recirculated throughout the engine by the oil pump, causing damage to the various engine components and eventually leading to catastrophic engine failure.

52.     Additionally, as the connecting rod bearings continue to fracture, the acceptable tolerances between the bearings, the connecting rod, and the crankshaft begin to rapidly deteriorate.  Eventually, the Class Vehicles begin producing a "knocking" sound originating from the engine as a result of the deteriorating bearings.  The defective connecting rod bearings may eventually cause the piston to break through the engine block due to the deterioration – this space is referred to in the automobile industry as "play."

53.     A photograph of a defective connecting rod bearing removed from one of the Class Vehicles is included below.  As shown in the photograph, the bearing is has fractured and worn away to the point of laying flush along the inside of the connecting rod.  A large fracture is also plainly visible along the bottom left side of the bearing.



CLASS ACTION COMPLAINT
CASE NO.:

54.     After the connecting rod bearings fail and metal debris is circulated throughout the engine via the engine oil, damage is caused to other key engine components.  As pictured below, the main cap – which fastens the crankshaft to the engine – can also be damaged by the metal debris in the engine oil.  After the main cap is damaged, play between the main cap and engine develops, which also leads to catastrophic engine failure.



55.     The Class Vehicles were manufactured with defective connecting rod bearings, materials and components.  This defect renders the Class Vehicles prone to costly repairs and premature and catastrophic engine failure.

56.     In addition to the defective connecting rod bearings, the Class Vehicles suffer from inadequate engine oil lubrication channels.  As explained above, engines are designed to have oil distributed throughout the engine through lubrication channels.  When operating properly, the engine oil is distributed throughout the engine through the oil pump and then flows back to the oil pan where it is redistributed throughout the engine.

57.     In the Class Vehicles, the lubrication channels are defective and clog under normal use and proper maintenance.  When the lubrication channels clog, engine oil is unable to be both pumped

-13-

CLASS ACTION COMPLAINT
CASE NO.:

throughout the engine (through the oil pump) and is also unable to adequately return to the oil pan, causing a condition known as oil starvation.  This results in insufficient lubrication throughout the Class Vehicles' engine, which causes premature wear of the engine components and catastrophic engine failure.

58.     The engine defect poses serious safety and security issues for operators and occupants of the Class Vehicles.  By way of example, the California Department of Motor Vehicles asserts that stalled engines pose a significant safety risk and, as part of its safety curriculum, instructs how to properly respond to a stalled action in order to avoid further risk of injury.[2]

59.     NHTSA takes a similar view of engine failure during vehicle operation.  For instance, according to *Forbes*, in 2011 the NHTSA recalled certain Chrysler and Dodge vehicles due to "engine seizure because of connecting rod bearing failure . . . Engine seizure could increase the risk of a crash."[3]

60.     Defendants failed to adequately research, design, test and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

**B.     Hyundai's Knowledge of the Engine defect**

61.     Plaintiff's experiences are by no means isolated or outlying occurrences.  Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same engine defect within the Class Vehicles.  Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) internal durability testing, and (6) other various sources, were well aware of the engine defect but failed to notify consumers of the nature and extent of the problems with the Class Vehicles' Theta II Engines or provide any adequate remedy.

---

[2]  https://www.dmv.ca.gov/portal/wcm/connect/ada60d78-9cfa-4250-bd2b-f616ef9dbe43/unit_8.pdf?MOD=AJPERES, at 08.F.07 (last visited Apr. 9, 2015).

[3]  http://www.forbes.com/sites/altheachang/2011/09/30/engine-problems-prompt-chrysler-recalls/ (last visited Mar. 29, 2015).

62.     Hyundai routinely monitors the internet for complaints similar in substance to those quoted below.  Hyundai's customer relations department routinely monitors the internet for customer complaints, and Hyundai has retained the services of third-parties to do the same.  Further, the customer relations division regularly receives and responds to customer calls concerning, *inter alia*, product defects.  Through these sources, Defendants were made aware of the engine defect.  The complaints also indicate Hyundai's knowledge of the defect and its potential danger.

63.     Hyundai is experienced in the design and manufacture of consumer vehicles.  As experienced manufacturers, Hyundai likely conducts testing on incoming batches of components, including the Theta II Engine, to verify that the parts are free from defects and comply with Hyundai's specifications.  Accordingly, Hyundai knew or should have known that the engine used in the Class Vehicles is defective and likely to fail prematurely, costing Plaintiff and Class Members thousands of dollars in repairs.

64.     Moreover, Defendants also should have known of the connecting rod bearing defect and insufficient lubrication channels due to the sheer number of reports of engine problems relating to the connecting rod bearings and/or lubrication channels.  For instance, Defendants' customer relations department, which interacts with Hyundai-authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of engine problems relating to the connecting rod bearings and lubrication channels.  Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

65.     Defendants' warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles.  Defendants dictate that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Defendants later determine to audit the dealership or otherwise verify the warranty repair.  For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Defendants

-15-

CLASS ACTION COMPLAINT
CASE NO.:

because Defendants will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

66. Defendants knew or should have known about the engine defect because of the high number of replacement parts likely ordered from Hyundai. All Hyundai service centers are required to order replacement parts, including engines, piston assemblies and connecting rod bearings directly from Defendants. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Defendants. Defendants routinely monitor part sales reports, and are responsible for actually shipping parts requested by dealerships and technicians. Thus, Defendants have detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The sudden increase in orders for Theta II Engines and engine components used in the Class Vehicles was known to Defendants, and should have alerted them to the scope and severity of the engine defect.

67. In September 2012, Defendants issued a technical service bulletin ("TSB") to their authorized dealerships regarding a knocking noise in the engine. TSBs are documents used by automotive manufacturers to inform dealership technicians about new information, including vehicle problems, new repair procedures, and improved parts. In TSB No. 12-EM-006, Defendants acknowledged that the Class Vehicles are defective and experience a "knocking noise." As a result, Hyundai directed dealers to blame the engine defect on the use of aftermarket oil filters and instructed the dealers to replace the aftermarket oil filter with a genuine Hyundai oil filter. The TSB also explained that this "repair" is not covered under warranty. Hyundai has failed to provide any post-sale notification to owners and lessees regarding the use of only genuine Hyundai oil filters in the Class Vehicles. Instead, Hyundai attempts to circumvent warranty obligation related to the engine defect by faulting customers for use of an aftermarket oil filter. The defective connecting rod bearings and oil lubrication channels are not, however, caused by the use of an aftermarket engine oil filter. Despite Defendants' knowledge of this fact, Defendants have not informed Plaintiff of the true cause of the defective connecting rod bearings and insufficient oil lubrication channels.

//

//

//

CLASS ACTION COMPLAINT
CASE NO.:

**C.      Complaints by Other Class Members**

68.      Representatives examples of complaints on the NHTSA website regarding the Class

Vehicles are included below (with emphasis supplied in capitalized bold, underlined letters)[4]:

Vehicle: 2011 Hyundai Sonata
Date Complaint Filed: 1/21/2015
Component(s): ENGINE
Date of Incident: 01/19/2015
NHTSA ID Number: 10678152
Manufacturer: Hyundai Motor America
Vehicle Identification No. (VIN): 5NPEC4ACBH0...
         SUMMARY:
         **I WAS DRIVING DOWN THE HIGHWAY, THE ENGINE STARTED MAKING A
         KNOCKING NOISE**. NO LESS THAN 30 SECONDS LATER DID THE CAR'S ENGINE
         MAKE A LARGE BAG NOISE AND I RAN OVER WHAT FELT LIKE PARTS. I COASTED
         A WHILE DOWN THE ROAD AND FINALLY PULLED THE CAR OVER TO THE SIDE
         OF THE ROAD. UPON OPENING THE HOOD I DISCOVERED OIL ALL OVER THE
         INTAKE AND EXHAUST MANIFOLDS AS WELL AS THE RADIATOR. I CALLED
         HYUNDAI ROADSIDE ASSISTANCE AND HAD THE CAR TOWED TO FAULKNER
         HYUNDAI IN HARRISBURG PA ON 1/19/14. THEY PROVIDED A SERVICE LOANER
         AND SAID THEY WOULD GET BACK TO ME WITH AN UPDATE ON THE CAR. I
         WAITED UNTIL WEDNESDAY THE 21ST BEFORE CALLING THEM, ONLY TO FIND
         OUT THAT THE ENGINE HAD SEIZED AND THEY HAD ALREADY TAKEN PICTURES
         OF THE DAMAGE AND SENT THEM TO THE HYUNDAI PEOPLE TO SEEK
         WARRANTEE COVERAGE. THEY ALSO ASKED ME FOR MAINTENANCE RECORDS
         ON THE CAR. I CHANGE THE OIL MYSELF AND ALWAYS PUT IN FULL SYNTHETIC,
         SO THEY HAD ME SUBMIT RECEIPTS FROM THE AUTO PARTS STORE PROVING I
         BOUGHT OIL AND FILTERS OR THE SONATA. I AM NOW AWAITING RESOLUTION
         FROM HYUNDAI. WILL UPDATE ONCE I HAVE AN ANSWER FROM HYUNDAI. THIS
         IS A PRETTY SERIOUS SAFETY CONCERN, **THE ENGINE LET GO AT 60+MPH
         WITHOUT WARNING, WHEN IT LET GO IT BLEW OIL ALL OVER THE ENGINE
         COMPARTMENT AND I'M SURE ON THE ROAD AS WELL. LUCKY I WAS
         DRIVING EARLY IN THE MORNING AND THEIR WAS VERY LITTLE TRAFFIC.**

Vehicle: 2011 Hyundai Sonata
Date Complaint Filed: 1/06/2015
Component(s): ENGINE
Date of Incident: 01/06/2015
NHTSA ID Number: 10670454
Manufacturer: Hyundai Motor America
Vehicle Identification No. (VIN): 5NPEB4AC4BH…
         SUMMARY:
         **I WAS TRAVELING DOWN A HIGHWAY WHEN MY ENGINE STARTED TO MAKE
         A KNOCKING SOUND**. THE CHECK ENGINE LIGHT CAME ON, AND WITHIN 10
         SECONDS MY CAR STOPPED RUNNING. I WAS STILL MOVING WHEN THIS
         HAPPENED. I WAS FORTUNATE TO BE ABLE TO COAST TO A CLOSE BY SIDE
         ROAD. I AM GRAVELY CONCERNED THAT THIS COULD HAVE HAPPENED ON THE
         INTERSTATE AT HIGHER SPEEDS, AND THE POTENTIAL CONSEQUENCES OF SUCH.
         **I HAD THE CAR TOWED TO A DEALER, AND THEY TELL ME THE ENGINE IS
         SHOT**. I CONTACTED HYUNDAI CUSTOMER CARE, AND THEIR RESPONSE WAS

---

[4] The foregoing complaints are reproduced as they appear on the NHTSA website.  Any typographical
errors are attributable to the original author of the complaint.

CLASS ACTION COMPLAINT
CASE NO.:

"WHAT DO YOU WANT ME TO DO ABOUT IT." AFTER MORE RESEARCH, I HAVE FOUND NUMEROUS OTHER INSTANCES OF THIS ENGINE FAILURE. IF THIS IS AN ONGOING PROBLEM, I FEEL HYUNDAI SHOULD DO SOMETHING BEFORE SOMEONE GETS KILLED WHEN THIS HAPPENS. PLEASE NOTE I AM THE SECOND OWNER OF THIS CAR. THE MILEAGE AT JUST OVER 85,000 IS MAINLY HIGHWAY MILES, AND THE CAR IS SERVICED REGULARLY.

Vehicle: 2011 Hyundai Sonata
Date Complaint Filed: 10/26/2014
Component(s): ENGINE
Date of Incident: 10/01/2014
NHTSA ID Number: 10650011
Manufacturer: Hyundai Motor America
Vehicle Identification No. (VIN): 5NPEB4AC0BH...
SUMMARY:
10/1/2014 @ 7:30PM EST - **WHILE DRIVING HOME, WAS AT A RED LIGHT WHEN THE CAR STALLED OUT. THEN A LOUD KNOCKING SOUND HAPPENED. *NO ENGINE LIGHT WAS ON*** IT IS VERY UNSAFE FOR THE ENGINE TO STALL OR JUST RANDOMLY SHUTOFF WHILE IN TRAFFIC. THERE WERE NO SIGNS OR WARNINGS, THE VEHICLE JUST STALLED. VEHICLE WAS NOT SAFE TO OPERATE. I HAD THE VEHICLE TOWED TO NORTHTOWNE HYUNDAI DEALER ON SHERIDAN DRIVE, BUFFALO NY.10/3/2014 @ 2:47PM EST - **NORTHTOWNE HYUNDAI DEALER CALLED ME SAID THAT I NEED TO REPLACE MY ENGINE BECAUSE THE PISTON POPPED**. I SAID WELL, MY CAR IS WELL WITHIN THE WARRANTY, ISN'T THIS COVERED? NORTHTOWNE HYUNDAI DEALER SAID THAT WE CAN'T SUBMIT YOUR WARRANTY CLAIM WITH OUT RECEIPTS OF YOUR MAINTENANCE FROM 5K MILES TO PRESENT. 10/3 - 10/13/2014 - CONTACTED OUR 3 LOCAL PLACES WE LIKE TO SEND OUR VEHICLES TO FOR COPIES OF OUR RECEIPTS. WITH NO PROBLEM WE WERE ABLE TO OBTAIN COPIES OF OUR LAST 7 OIL CHANGES AND GENERAL MAINTENANCE RECEIPTS. 10/14/2014 @ 2:00PM EST - MY HUSBAND GAVE NORTHTOWNE HYUNDAI DEALER OUR RECEIPTS AND HE STATED THAT HE WILL SUBMIT OUR CLAIM TO HYUNDAI. 10/24/2014 @ 8:59AM EST - "REGIONAL" / "CORPORATE" CALLED ME AND STATED "THE DISTRICT MANAGER WHO WOULD HAVE AUTHORIZED THE REPAIR, HAD THE DEALERSHIP PARTIALLY DISASSEMBLE THE ENGINE; TAKE OFF THE COVER FOR INSPECTION, AND THERE'S A CONDITION OF SLUDGE WHICH IS INDICATIVE OF EITHER THE MAINTENANCE INTERVALS NOT BEING FOLLOWED; OIL CHANGE NOT FREQUENTLY ENOUGH OR POSSIBLY THE QUALITY OR GRADE OF THE OIL USED. IN EITHER CASE THESE IS NOT A MANUFACTURE DEFECT, SO HE HAS DENIED WARRANTY COVERAGE." I'VE ALSO ADDED MY COMPLAINT TO THE FOLLOWING:[ HTTP://WWW.CHIMICLES.COM/2011-HYUNDAI-SONATA-ENGINE-FAILURE-CLASS-ACTION-LAWSUIT ] **OUR LAST OIL CHANGE WAS 8/2/2014 AT 43K MILES ** WE HAD A CLEAN BILL OF HEALTH, NO ISSUES WERE REPORTED OR MAINTENANCE RECOMMENDED AT THAT TIME**.

Vehicle: 2012 Hyundai Sonata
Date Complaint Filed: 1/02/2015
Component(s): ENGINE
Date of Incident: 12/27/2013
NHTSA ID Number: 10669708
Manufacturer: Hyundai Motor America
Vehicle Identification No. (VIN): 5NPEB4AC0CH…
SUMMARY:
**WAS DRIVING 35 MPH MAKING A TURN WHEN I HEARD A KNOCKING NOISE**. WAS SUBTLE AT FIRST. CHECKED OIL AND WAS LOW. ADDED 1 QRT OF OIL. DROVE HOME ABOUT 2 MILES AND KNOCKING BECAME EXTREMELY LOUD.

CLASS ACTION COMPLAINT
CASE NO.:

**TOOK IT TO LEN STOLER HYUNDAI DEALERSHIP AND THEY STATED THAT EXHAUST MANIFOLD, DRIVE BELT, PISTONS, AND VALVES NEED TO BE REPLACED**. BASICALLY, $6300.00 WORTH OF WORK. CAR IS UP TO DATE ON ALL MAINTENANCE. NO OTHER ISSUES WITH CAR. WARRANTY DOES NOT COVER ENGINE DAMAGE AND NO HELP WAS GIVEN. I HAVE SEEN MANY OTHER COMPLAINTS ABOUT THE SAME ENGINE ISSUES. HYUNDAI SHOULD REPLACE!

69.     Upon information and belief, Hyundai regularly monitors these NHSTA databases as part of its ongoing obligation to identify potential defects in its vehicles.  NHTSA complaints establish that Hyundai knew, or should have known, of the engine defect *at least* as early as December 27, 2013. Upon information and belief, Defendants' became aware of the engine defect earlier than December 2013 through: (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) durability testing, and (6) other various sources.

**D.      Hyundai's Warranty-Related Practices**

70.     Hyundai issued two relevant warranties with each Class Vehicle: a "New Vehicle Limited Warranty," and a "Powertrain Warranty."

71.     Under the basic New Vehicle Limited Warranty, Hyundai agreed to repair defects reported within the earlier of 5 years or 60,000 miles.

72.     Under the Powertrain Warranty, Hyundai agreed to repair defects affecting various powertrain components through 10 years and 100,000 miles.  According to the Owner's Handbook and Warranty Information Book, Powertrain Coverage Components include:

> **ENGINE**
> Cylinder block/head and all internal parts, manifolds, timing gears, timing chain, timing cover, gaskets and seals, oil pump, water pump, fly-wheel, oil pan assembly, rocker cover and engine mounts, and turbocharger.
>
> **TRANSMISSION/TRANSAXLE**
> Case and all internal parts, axle shafts (front/rear), constant velocity joints, front/rear hub bearings, propeller shafts, seals and gaskets, torque converter and converter housing and clutch cover and housing, transfer case for Santa Fe, Tucson and Veracruz . . . .

73.     Hyundai instructs vehicle owners and lessees to bring their vehicles to a Hyundai dealership for the warranty repairs.  Many owners and lessees have presented Class Vehicles to Hyundai dealerships with complaints related to the engine defect.

74.     Hyundai has evaded its warranty obligations by failing to tell consumers that their vehicles are defective and by representing that the cause of the defect is the owner's neglect to properly maintain the engine oil and/or engine oil level. This representation, however, is false as the engine is inherently defective and will inevitably fail.

75.     In addition, Hyundai has also evaded its warranty obligations by requiring consumers to produce the entire maintenance history of the Class Vehicles, including a mandate that all oil changes be completed at a Hyundai dealership, before determining whether to make the necessary repairs under warranty. Hyundai, however, knows that the defect in the Class Vehicles' engines manifests even if the owner or lessee has followed Hyundai's oil change guidelines. Even if consumers produce their vehicles' maintenance history, Hyundai blames the defect and engine failure on the consumer, refuses to cover the necessary repairs under warranty, and charges as much as $10,000 to repair the engine.

76.     Hyundai also advertises that it offers "America's Best Warranty." With respect to the powertrain warranty, however, Hyundai publicizes the existence of 10 year/100,000 mile powertrain warranty but fails to mention that subsequent owners only receive powertrain warranty coverage for 5 years/60,000 miles. As such, subsequent owners are left to discover the limited warranty coverage after purchasing their vehicle. Hyundai's failure to cover repairs under the powertrain warranty between 5 years/60,000 miles and 10 years/100,000 miles is therefore unconscionable and unenforceable. A typical Hyundai advertisement touting "America's Best Warranty" is pictured below:



AMERICA'S BEST WARRANTY

* 10-year/100,000-mile Powertrain Limited Warranty

* Lifetime Hybrid Battery Warranty

77.     In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the defect, despite such defect having been contained in the Class Vehicles when

CLASS ACTION COMPLAINT
CASE NO.:

manufactured by Defendants, repair and replacement of the Theta II Engine and the unnecessary and premature replacement of the connecting rod, crank shaft, oil pump, and other engine components.

78.     Furthermore, a number of Class Members, who presented their Class Vehicles to Hyundai dealerships due to issues related to the defective connecting rod bearings and insufficient engine oil lubrication channels, were denied warranty repairs and instead informed that was nothing wrong with their vehicles.  As a result, after expiration of the warranty period, Class Members are forced to pay costly repairs to correct the defect.

## CLASS ALLEGATIONS

79.     Plaintiff brings this action on her own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

80.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above.  Specifically, the state class consists of the following:

**California Class:**

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

81.     Together, the California Class and the Nationwide Class shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

82.     Numerosity:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that hundreds

-21-

of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.

83. Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, whether:

    a. The Class Vehicles were sold with a defect;

    b. Hyundai knew of the defect but failed to disclose the problem and its consequences to its customers;

    c. A reasonable consumer would consider the defect or its consequences to be material;

    d. Hyundai has failed to provide free repairs as required by its New Vehicle Limited Warranty and/or Powertrain Warranty;

    e. Hyundai should be required to disclose the existence of the defect; and

    f. Defendants' conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein.

84. Typicality: All of Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a Class Vehicle with the engine defect, defective vehicle design, and defective engine, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class Members.

85. Adequacy: Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

86. Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually

-22-

impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

87.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**

**(Cal. Civ. Code § 1750, *et seq*.)**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

88.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

89.    Plaintiff brings this claim on behalf of herself and on behalf of the Members of the Class against all Defendants.

90.    Defendants are "persons" as that term is defined in California Civil Code § 1761(c).

91.    Plaintiff and the Class are "consumers" as that term is defined in California Civil Code §1761(d).

92.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Vehicles suffer from a design defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

-23-

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

93.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

94.     Defendants knew that their Class Vehicles and their engines were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

95.     Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and the defective nature of the connecting rod bearings and insufficient engine oil lubrication channels because:

a.  Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and their engines;

b.  Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles and their engine had dangerous safety defect until manifestation of the defect;

c.  Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect; and

d.  Defendants actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiff and Class Members that the cause of their engine problems was due to Plaintiff and the Class Members' inability to maintain the proper engine oil levels despite knowing the repairs needed to correct the defect.

96.     In failing to disclose the engine defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

97.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.  Had Plaintiff and the Class

known about the defective nature of the Class Vehicles and their engines, they would not have purchased the Class Vehicles or would have paid less for them.

98.     Plaintiff has provided Defendants with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).

99.     Plaintiff's and the other Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

100.     Therefore, Plaintiff and the other Class Members are entitled to equitable and monetary relief under the CLRA.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE

### (Cal. Bus. & Prof. Code § 17200)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

101.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102.     Plaintiff brings this claim on behalf of herself and on behalf of the Members of the Class against all Defendants.

103.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

104.     Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class Members that the Class Vehicles suffer from a design defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems).  Defendants should have disclosed this information because they were in a superior position to know the true facts related to the design defect, and Plaintiff and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

105.     The defective connecting rod bearings and insufficient engine oil lubrication channels constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

CLASS ACTION COMPLAINT
CASE NO.:

106. These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the design defect and suppressing other material facts from Plaintiff and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and the Class Members, as it would have been to all reasonable consumers.

107. The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

108. Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

109. Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

110. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

111. Plaintiff brings this claim on behalf of herself and on behalf of the Members of the Class against all Defendants.

112. California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any

CLASS ACTION COMPLAINT
CASE NO.:

statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

113.   Hyundai caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Hyundai, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

114.   Hyundai has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

115.   Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Hyundai's unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Class Vehicles, Plaintiff and the other Class Members relied on the misrepresentations and/or omissions of Hyundai with respect to the safety and reliability of the Class Vehicles.  Hyundai's representations were untrue because the Class Vehicles are distributed with defective connecting rod bearings and insufficient engine oil lubrication channels.  Had Plaintiff and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.  Accordingly, Plaintiff and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

116.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Hyundai's business.  Hyundai's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

117.   Plaintiff, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Hyundai from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class Members any money Hyundai acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

//

//

**FOURTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

118.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

119.    Defendants provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain.  Accordingly, Defendants' warranties are express warranties under state law.

120.    The parts affected by the defect, including the rotating assembly and engine block, were manufactured and distributed by Defendants in the Class Vehicles and are covered by the warranties Defendants provided all purchasers and lessors of Class Vehicles.

121.    Defendants breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

122.    Plaintiff notified Defendants of the breach within a reasonable time, and/or was not required to do so because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendants also know of the defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

123.    As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs related to the diagnosis and repair of the defective connecting rod bearings and insufficient engine oil lubrication channels.

124.    Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

CLASS ACTION COMPLAINT
CASE NO.:

125.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class.  Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Hyundai and the Class Members, and Hyundai knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

126.    Plaintiff and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

127.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

128.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

129.    Defendants provided Plaintiff and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their engines suffered from defective connecting rod bearings and insufficient engine oil lubrication channels at the time of sale that causes the vehicles to experience premature and catastrophic engine failure.  Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

130.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were

-29-

safe and reliable for providing transportation and would not experience premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

131.    Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

132.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## SIXTH CAUSE OF ACTION

## BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

### (On behalf of the Nationwide Class or, Alternatively, the California Class)

133.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

134.    Plaintiff brings this action on behalf of herself and on behalf of the Class against Defendant Hyundai Motor America ("HMA"), only.

135.    Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

136.    Defendant HMA  is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

137.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

138.    Defendant HMA's New Vehicle Limited 5 years/60,000 miles Basic Warranty and 10 years/100,000 miles and Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

139.    Defendant HMA breached the express warranties by:

    i.    Providing a 5 year/60,000 miles Basic Warranty and a 10 year/100,000 miles Powertrain Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

-30-

    ii.    Selling and leasing Class Vehicles with engines that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

    iii.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its component parts in order to remedy the defective connecting rod bearings and insufficient engine oil lubrication channels.

140.    Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

141.    Defendant HMA's breach of the express warranties has deprived the Plaintiff and the other Class Members of the benefit of their bargain.

142.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

143.    Defendant HMA has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiff and the other Class Members were not required to do so because affording Defendant HMA a reasonable opportunity to cure its breach of written warranties would have been futile.  Defendant HMA was also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

144.    As a direct and proximate cause of Defendant HMA's breach of the written warranties, Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant HMA's conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## SEVENTH CAUSE OF ACTION

### COMMON LAW FRAUD

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

145.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

CLASS ACTION COMPLAINT
CASE NO.:

146.    Defendants made material omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the Theta II Engine, which was not readily discoverable until years later, often after the New Vehicle Limited Warranty or the Powertrain Warranty has expired.  As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defect and all of the resultant problems.

147.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and the Class Members rely on them.

148.    Plaintiff and the Class Members reasonably relied on these omissions, and suffered damages as a result.

## EIGHTH CAUSE OF ACTION

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

149.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

150.    Every contract in California contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

151.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class Members of the defective connecting rod bearings and insufficient engine oil lubrication channels in the Class Vehicles, and failing to fully and properly repair this defect.

152.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

//
//
//
//

-32-

CLASS ACTION COMPLAINT
CASE NO.:

## NINTH CAUSE OF ACTION

### VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

153.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

154.    At all relevant times hereto, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles.  Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

155.    Defendants provided Plaintiff and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.  The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale that causes the Class Vehicles to experience premature and catastrophic engine failure.

156.    The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the defect.

157.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Hyundai were safe and reliable for providing transportation and would not prematurely and catastrophically fail; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

158.    Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose.  Instead, the Class Vehicles are defective, including, but not limited to, the defective design and/or manufacture of the Theta II Engines.

159.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.  appoint Plaintiff as the representative of the Class and their counsel as Class counsel;

C.  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class Members are entitled (though such damages are not currently sought under the CLRA claim);

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the design defect(s);

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.

Dated:  April 14, 2015.                               Respectfully submitted,

                                                      MCCUNEWRIGHT LLP

                                           By:    /s/ Richard D. McCune
                                                  Richard D. McCune
                                                  Attorneys for Plaintiff and Putative Class

1

## JURY DEMAND

Plaintiff, on behalf of herself and the putative Class, demands a trial by jury on all issues so triable.

MCCUNEWRIGHT LLP

By:   /s/ Richard D. McCune
Richard D. McCune
Attorneys for Plaintiff and Putative Class

CLASS ACTION COMPLAINT
CASE NO.: