# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ELIZABETH MENDOZA, et al., | Case No. 15-cv-01685-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |
| HYUNDAI MOTOR COMPANY, LTD, et al., | |
| Defendants. | |
| | [Re: ECF 73, 74] |

Alleging that their 2011–2014 Hyundai Sonatas were sold with defective engines, Plaintiffs Elizabeth Mendoza and Beth Graham (collectively, "Plaintiffs") sued Hyundai Motor Co. The parties now jointly appear before the Court in support of final approval of their class action settlement.

Two motions are pending in this putative class action for violations of California's consumer protection statutes, the Magnuson-Moss Warranty Act, and the Song-Beverly Act, as well as for breach of express and implied warranty, common law fraud, and breach of the duty of good faith and fair dealing. *See generally* Compl., *Mendoza v. Hyundai Motor Am., Inc.*, No. 15-cv-1685, ECF 1 (filed Apr. 14, 2015) (hereinafter, "Mendoza Compl."); Compl., *Graham v. Hyundai Motor Am., Inc.*, No. 15-2071, ECF 1 (filed May 7, 2015) (hereinafter, "Graham Compl."). First, Plaintiffs move for an order granting final approval to the parties' settlement agreement. Mot. for Final Settlement Approval, ECF 73, (hereinafter, "Final Approval Mot."). Second, Plaintiffs move for an award of attorneys' fees, litigation costs, and a service award to the class representatives. Mot. for Att'y Fees, Costs, & Service Awards, ECF 74 (hereinafter, "Mot. for Att'y Fees"). The Court held a final fairness hearing on December 15, 2016. For the reasons set forth below, the Court GRANTS the motion for final approval and GRANTS IN PART the

United States District Court
Northern District of California

1   motion for attorneys' fees, costs, and service award.

2   **I.   BACKGROUND**

3       **A.   The Parties and Claims**

4       Plaintiffs bring this class action against Hyundai Motor America ("Hyundai"), alleging that

5   the 2011–2014 model year Hyundai Sonatas were sold with defective engines.  Plaintiffs bring

6   these claims on behalf of "[a]ll owners and lessees of a Class Vehicle[1] who purchased or leased

7   the Class Vehicle in the United States, excluding the territories, or abroad while on active military

8   duty."  Final Approval Mot. 5 (footnote added).

9       Plaintiff Mendoza filed her suit on April 14, 2015.  *See generally* Mendoza Compl.

10  Mendoza alleges that her 2011 Hyundai Sonata began to exhibit a loud knocking noise in the

11  engine, and that her Hyundai dealership told her one of the pistons had blown out.  *Id.* ¶ 19.  The

12  dealership refused to cover the necessary repairs under warranty, leaving Mendoza to pay a local

13  mechanic $3,000 to replace her engine.  *Id.* ¶¶ 20–21.  Plaintiff Graham, whose 2011 Sonata also

14  suffered an engine failure, filed suit on May 7, 2015.  *See generally* Graham Compl.  Graham

15  alleges that the engine in her Sonata seized and turned off while her husband was driving in rush-

16  hour traffic.  *Id.* ¶ 23.  Mr. Graham was able to coast to the side of the highway and call a tow

17  truck.  *Id.* ¶ 24.  Hyundai agreed to pay for part of the required engine repair, purportedly as a

18  "goodwill gesture," but the Grahams spent $2,000 to repair the engine, $800 for a rental car while

19  the car was being repaired, and $150 for towing and the initial diagnosis.  *Id.*

20      Plaintiffs allege that a common defect in the vehicles' rotating assembly—specifically, in

21  the lubrication channels within the connecting rods and other parts of the assembly—was

22  responsible for the various symptoms and eventual engine failures experienced by Sonata owners.

23  Mendoza Compl. ¶ 49–57; Graham Compl. ¶¶ 11–15.  Plaintiffs further allege that to remedy the

24  defect, the "short block" engine must be replaced, along with potentially other components of the

25  vehicle, such as its battery, starter, or "long block" engine.  Gibbs Decl. ISO Preliminary Approval

26

27      _____

28  [1] The term "Class Vehicles" refers to "all 2011, 2012, 2013, and 2014 model year Hyundai Sonata vehicles factory equipped with a Theta II 2.0-liter or 2.4-liter gasoline direct injection engine[.]"  *See* Ex. 1 to Gibbs Decl. § I.F, ECF 57-2 (hereinafter, "Settlement Agreement").

United States District Court
Northern District of California

of Class Settlement ("Gibbs Decl.") ¶ 4, ECF 57-1.  Plaintiffs contend that by selling Sonata vehicles without disclosing that the engines were defective, Hyundai violated California's consumer protection statutes and common law.  Mendoza Compl. ¶¶ 88–159; Graham Compl. ¶¶ 38-50.  Plaintiffs also aver that Hyundai breached its warranty obligations by blaming owners for causing the engine failures, accusing them of not properly maintaining or servicing their vehicles. Mendoza Compl. ¶¶ 68, 88–159; Graham Compl. ¶¶ 38–50.

The Court consolidated the two cases on June 24, 2015.  ECF 27.  The parties were able to reach a preliminary settlement before Plaintiffs filed a consolidated complaint.  The Court granted preliminary approval to the parties' proposed settlement agreement and conditionally certified the putative class for settlement purposes only on July 8, 2016.  ECF 67.  In its order granting Plaintiff's motion for preliminary approval, the Court also (1) appointed the law firm of Gibbs Law Group LLP and McCune Wright LLP, as counsel for the settlement class; (2) approved the parties' proposed notice; (3) set the deadline for filing objections and requests for exclusion by November 28, 2016; and (4) set the date of the fairness hearing to December 15, 2016.  *See* ECF 67.

Plaintiffs have now filed a motion for final approval of the class action settlement and a motion for attorney fees, costs, and service award.  ECF 73, 74.  The Court held a fairness hearing on December 15, 2016.

### B.    Terms of the Agreement

Under the terms of the preliminarily approved settlement agreement, Hyundai has agreed to (1) warn drivers about the problem; (2) extend its Powertrain Warranty for free inspections and repairs; (3) reimburse Class Members for past vehicle repairs, rental cars, and towing services; and (5) compensate Class Members for trade-ins and sales.  *See* Settlement Agreement; Final Approval Mot. 6–9.  At the fairness hearing, Class Counsel clarified that it would be "very difficult" to put a dollar value on the settlement because not every Class Vehicle suffers from the defect.  Hr'g Tr. 6:18–21.  As of December 15, 2016, Hyundai had paid about $8.5 million to 2,883 Class Members in connection with this settlement.  *Id.* 4:20.

The Court discusses each aspect of the agreement below.

### i.    Warning Drivers about Stalling

Hyundai will be responsible for ensuring Class Members are adequately warned about possible engine failure through the following mechanisms:

- *Recall Notices*:  Owners and lessees of the 2011–2012 Class Vehicles have been sent notices by mail pursuant to the recall initiated in September 2015.

- *Class Notice by Direct Mail*:  Hyundai has disseminated a long form notice warning about potential engine stalling and encouraging Class Members to schedule the free inspection provided by the settlement.

- *Class Notice by Email*: Hyundai has emailed the class notice to all Class Members for whom it possesses email addresses.

- *Color Pamphlet to be Kept with Owner's Manual*:  Hyundai has mailed and emailed Class Members a color pamphlet designed to be kept with the owner's manual.  The pamphlet warns of the risks of the defect, encourages drivers to obtain inspections and repairs as needed, and reminds them of various settlement benefits to which they are entitled.  The pamphlets will also be distributed at dealerships.

- *Website and Phone*:  Hyundai will maintain a dedicated settlement website and toll-free telephone number to provide additional information and answer questions about the settlement.

Settlement Agreement §§ IV.C.1–4, IV.C.6–8

### ii.    Warranty Extension for Free Inspections and Repairs

Under the settlement, all current owners and lessees of Class Vehicles can receive a free engine inspection and, if necessary, a short block engine repair.  *Id.* §§ IIA.1–11.  This benefit will come in two forms.  First, Hyundai will extend its Powertrain Warranty to cover short block engines for a 10-year/120,000-mile period, whichever comes first.  *Id.* §§ I.J, II.A.1.  The full duration of the extended warranties negotiated for original and subsequent owners are transferable to subsequent owners.  *Id.* § II.A.3.  Second, all Class Members were permitted to bring their vehicles to a Hyundai retailer for free inspections between September 28, 2016 and December 27, 2016.  *Id.* § II.A.I.  Any vehicle determined to need a short block repair based on that inspection received free repairs under the extended warranty, regardless of mileage or current length of ownership.

Under the settlement, extended warranty inspections and repairs may not be denied for

United States District Court
Northern District of California

1   failure of the owner to properly maintain or service those vehicles except in "limited exceptional

2   neglect circumstances." *Id.* § II.A.6.  All such denials must be reported to Class Counsel.

3   Additionally, Hyundai will cover all costs associated with repairs, including replacement parts,

4   labor, diagnoses, and loaner vehicles.[2]  *Id.* §§ II.A.2, II.A.5.  Finally, the settlement contains a

5   BBB dispute resolution process, through which Class Members can contest a dealership's

6   warranty decision.  *Id.* § III.6.  All fees and expenses aside from attorneys' fees associated with

7   this dispute resolution process will be borne by Hyundai.

8          **iii.**       **Reimbursements for Past Vehicle Repairs, Rental Cars and Towing Services**

9          The settlement also reimburses Class Members in full for repairs due to the alleged defect,

10   including short block engine repairs, provided certain conditions are met.  Primarily, the repair

11   must have been performed within the period covered by the extended settlement warranty, *i.e.*,

12   within the earlier of 10 years of the Class Vehicle's original sale or lease or 120,000 miles.  *Id.*

13   § II.C.1.  Additionally, Hyundai will reimburse Class Members who incurred rental car or towing

14   expenses reasonably related to a reimbursable repair.

15          To obtain a refund, Class Members must complete a brief Claim Form that can be

16   submitted by mail, email, or through the settlement website.  *See* Claim Form, Ex. B to Settlement

17   Agreement, ECF 57-2.  Class Members seeking reimbursements must provide few or no

18   supporting documents to verify their expenses.  Settlement Agreement § II.C.2.

19          **iv.**       **Compensation for Trade-Ins and Sales**

20          Class Members who sold or traded in the Class Vehicles for reduced value rather than

21   paying for the necessary repairs will be able to seek compensation from Hyundai.  *Id.* § II.D.3.

22   Those Class Members must submit a Claim Form with documentation demonstrating that their

23   Class Vehicle was diagnosed with an engine failure prior to receiving notice of the settlement or

24   recall, and that they sold or traded-in the Class Vehicle without first obtaining the recommended

25   engine-block repair.  *Id.*  Hyundai will evaluate the transaction and propose compensation for any

26   effect on the fair market value of the Class Vehicle at the trade-in or sale.  *Id.*  Any unsatisfied

27

28   ---
[2] Alternatively, Hyundai will reimburse rental car costs.

1  Class Member has the right to avail himself or herself of the BBB dispute resolution process

2  outlined above.

3             **v.    Mutual Release**

4         As part of the settlement, Class Members agree to release Hyundai and its related entities

5  from all known and unknown claims related to the engine defect alleged or that could have been

6  alleged in the litigation.  Settlement Agreement §§ I.N, VI.  Hyundai will also release Plaintiffs

7  and Class Counsel from any claims related to this litigation or settlement.  *Id.* §§ I.O, VI.  Claims

8  for death, personal injury, damages to tangible property other than a Class Vehicle, and/or

9  subrogation, are not covered by the settlement.  *Id.* § VI.

10  **II.    FINAL APPROVAL OF SETTLEMENT AGREEMENT**

11         In line with its previous order granting preliminary approval, the Court now concludes that

12  the proposed settlement is fair, adequate, and reasonable.

13      **A.    Legal Standard**

14         "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

15  approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class

16  settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  In

17  addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is

18  fundamentally fair, adequate, and reasonable."  *Id.* at 1026.  In order to assess a settlement

19  proposal, the district court must balance a number of factors:

20            (1) the strength of the plaintiffs' case; (2) the risk, expense,
          complexity, and likely duration of further litigation; (3) the risk of

21            maintaining class action status throughout the trial; (4) the amount
          offered in settlement; (5) the extent of discovery completed and the

22            stage of the proceedings; (6) the experience and views of counsel;
          (7) the presence of a governmental participant; and (8) the reaction

23            of the class members to the proposed settlement.

24  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

25         Settlements that occur before formal class certification also require a higher standard of

26  fairness.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such

27  settlements, in addition to considering the above factors, the court also must ensure that "the

28  settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset*

United States District Court
Northern District of California

1    *Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

2        **B.      Rule 23(a) and (b) Requirements**

3        A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

4            (1) the class is so numerous that joinder of all members is
             impracticable;

5            (2) there are questions of law or fact common to the class;

6            (3) the claims or defenses of the representative parties are typical of
7            the claims or defenses of the class; and

8            (4) the representative parties will fairly and adequately protect the
             interests of the class.

9    Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule . . .

10   designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand

11   undiluted, even heightened, attention[.]"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

12   (1997).  "Such attention is of vital importance, for a court asked to certify a settlement class will

13   lack the opportunity, present when a case is litigated, to adjust the class, informed by the

14   proceedings as they unfold."  *Id.*

15       In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show

16   that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc.*, 521 U.S. at

17   614.  Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class

18   members predominate over any questions affecting only individual members" and (2) "a class

19   action is superior to other available methods for fairly and efficiently adjudicating the

20   controversy."  Fed. R. Civ. P. 23(b)(3).  The "pertinent" matters to these findings include:

21           (A) the class members' interests in individually controlling the
22           prosecution or defense of separate actions;

23           (B) the extent and nature of any litigation concerning the
             controversy already begun by or against class members;

24           (C) the desirability or undesirability of concentrating the litigation of
25           the claims in the particular forum; and

26           (D) the likely difficulties in managing a class action.

27   *Id.*

28       The Court previously found the putative class satisfied the requirements for numerosity,

7

1    commonality, typicality, and adequacy of representation under Rule 23(a).  Order Granting

2    Preliminary Approval of Class Settlement ¶ 2, ECF 67 (hereinafter, "Preliminary Approval

3    Order").  The Court is unaware of any changes that would alter its analysis, and thus sees no

4    reason to revisit the analysis of Rule 23.  *See G.F. v. Contra Costa Cty.*, No. 16-3667, 2015 WL

5    4606078, at *11 (N.D. Cal. July 30, 2015).

6       **C.    Adequacy of Notice**

7           "The class must be notified of a proposed settlement in a manner that does not

8    systematically leave any group without notice."  *Officers for Justice v. Civil Serv. Comm'n of City*

9    *& Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

10          The Court has previously approved the parties' proposed notice procedures for the class.

11   Preliminary Approval Order 3.  In the motion for final approval, Plaintiffs state that the parties

12   have carried out this notice plan.  Final Approval Mot. 2.   Hyundai mailed the long form class

13   notice via first class mail to 1.3 million Class Members between August 15, 2016 and September

14   28, 2016.  *Id.*; Reply ISO Final Approval Mot. 2, ECF 76.  Hyundai also sent the email version of

15   the class notice to those Class Members for whom Hyundai had an email address.  Zielomski

16   Decl. ¶ 5, ECF 76-4.  Hyundai sent this email version to over 1.4 million email addresses, which

17   included multiple email addresses per Class Member.  The notice informed Class Members about

18   all key aspects of the settlement, the date, time, and place of the fairness hearing, and the process

19   for objection and opt-out.

20          Of the 1,310,640 long form class notices sent via mail, 8,755 were returned as

21   undeliverable.  Zielomski Decl. ¶ 4.  Of the 1,413,087 emails sent, 269,984 were returned as

22   undeliverable.  *Id.* ¶ 5.  For the mailed notices returned as undeliverable, Hyundai used its best

23   efforts to conduct an advanced address search using its customer database, and was able to identify

24   35 alternative addresses.  *Id.*  Hyundai mailed a long form class notice to those alternative

25   addresses.

26          In light of these actions and the Court's prior order granting preliminary approval, the

27   Court finds the parties have sufficiently provided notice to the settlement Class Members.  *See*

28   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that notice must

United States District Court
Northern District of California

8

1    "apprise interested parties of the pendency of the action and afford them an opportunity to present

2    their objections"); *Lundell v. Dell, Inc.*, No. C05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec.

3    5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable

4    notice" and satisfied due process requirements).

5        **D.    Fairness, Adequacy and Reasonableness**

6            **i.    Strength of Plaintiffs' Case and Risk of Continuing Litigation**

7        Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

8    must overcome in making their case."  *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848,

9    851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a

10   class settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

11       Here, Plaintiffs acknowledge that despite the strength of their case, were the case to

12   continue, it could fail on liability or be whittled down in terms of overall liability.  Final Approval

13   Mot. 12.  For example, Plaintiffs assert that Hyundai might have a colorable defense because it

14   did not discover the problem until after it sold many of the Class Vehicles or that the majority of

15   repairs not covered under warranty or through goodwill were fairly denied given the owner's

16   failure to properly maintain the vehicle.  *Id.*  Moreover, Plaintiffs recognize the impact a delay on

17   any damage award could have on Class Members:  "Any damage award would need to be

18   distributed to class members based on vehicle ownership records that would then be several years

19   older; class members would also likely need to locate receipts for repairs that would be equally

20   old, significantly reducing the overall recovery."  *Id.*; *id.* at 13 ("The passage of time would [ ]

21   pose a risk to class members because of the potential for engine seizure or stalling, which they will

22   now be notified about and able to address through free inspections and repairs.").  Additionally,

23   Plaintiffs admit that they would face risk at the class certification stage, given the highly

24   discretionary nature of class certification proceedings.  *Id.* at 3.

25       The Court finds that these factors weigh in favor of settlement.

26           **ii.    Settlement Amount**

27       "In assessing the consideration obtained by the class members in a class action settlement,

28   'it is the complete package taken as a whole, rather than the individual component parts, that must

United States District Court
Northern District of California

1    be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

2    523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628).  "In this regard, it is

3    well-settled law that a proposed settlement may be acceptable even though it amounts to only a

4    fraction of the potential recovery that might be available to the class members at trial."  *Id.* (citing

5    *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

6        Although Class Counsel stated that it would be "very difficult" to put a dollar value on the

7    settlement because not every Class Vehicle suffers from the defect, Hr'g Tr. 6:18–21, the

8    proposed settlement provides Class Members with virtually all relief requested in Plaintiffs'

9    complaints.  As detailed above, Hyundai is warning drivers potentially affected by this defect of

10   the defect and is extending the warranty at its expense.  Settlement Agreement § II.A.I.  Hyundai

11   is also reimbursing Class Members for past repair expenses in full, with only minimal

12   documentation requirements and a streamlined claims process.  *Id.* § II.C.2.  And, any Class

13   Members who sold or traded in their vehicles to avoid the expense of repairing the engine will be

14   entitled to a compensation process.  *Id.* § II.D.3.  Under these circumstances, this factor weighs in

15   favor of approval.

16        ### iii.    Extent of Discovery

17        "In the context of class action settlements, 'formal discovery is not a necessary ticket to the

18   bargaining table' where the parties have sufficient information to make an informed decision

19   about settlement."  *In re Mego Fin. Corp.*, 213 F.3d at 459 (citation omitted).

20        Here, Plaintiffs' counsel have reviewed publicly available sources of technical information,

21   interviews of drivers, and consultations with automotive experts; retained an automotive expert to

22   conduct a tear down and analysis of a failed Sonata engine; reviewed raw data and analysis

23   relating to potentially relevant warranty claims, customer complaints, goodwill payments, and

24   field service reports; reviewed materials prepared internally to brief Hyundai executives about the

25   alleged engine defect and root cause analysis; and conducted a full interview of the Hyundai

26   engineer most familiar with the data and analysis.  Final Approval Mot. 14.  These actions put

27   Class Counsel in a strong position to evaluate their case and conclude that settlement was the best

28   way forward.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  (finding the parties were sufficiently informed about the case prior to settling because they

2  engaged in discovery, took depositions, briefed motions, and participated in mediation).  This

3  factor therefore weighs in favor of approval.

4          **iv.    Counsel's Experience**

5          Plaintiffs' counsel have recommended approval of the settlement.  Final Approval Mot. 15.

6  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."

7  *In re Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d

8  373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than

9  courts to produce a settlement that fairly reflects each parties' expected outcome in litigation.").

10  Here, Class Counsel has substantial experience litigating consumer class actions against

11  automotive companies.  Final Approval Mot. 15.  In light of Class Counsel's considerable

12  experience and their belief that the settlement provides more than adequate benefits to Class

13  Members, this factor weighs in favor of approval.

14          **v.    Presence of a Governmental Participant**

15          Because there is no governmental entity involved in this litigation, this factor is

16  inapplicable.

17          **vi.    Reaction of the Class**

18          There are approximately 1.3 million Class Members.  Reply ISO Final Approval Mot. 2.

19  The deadline for Class Members to submit objections to the settlement or the fees and expenses

20  motion, or to request exclusion from the Settlement Class was November 7, 2016.  Final Approval

21  Mot. 2.  Since notice of the settlement was disseminated, over 800 Class Members have contacted

22  Class Counsel and Hyundai has paid approximately $8.58 million in compensation to 2,883 Class

23  Members.  Reply ISO Final Approval Mot. 2; Hr'g Tr. 4:20–21.  Moreover, as of December 15,

24  2016, out of 885,000 current owners, 338,054 (about 38%) had availed themselves of the option to

25  receive a free inspection and, if necessary, a repair.  Reply ISO Final Approval Mot. 2.  Class

26  Counsel expects this number to rise, as Class Members will remain eligible for free repairs

27  throughout the 10-year/120,000-mile extended warranty period.  *Id.*

28          In contrast, only 247 Class Members (approximately 0.017%) have opted out.  Hr'g Tr.

10:8–9; Reply ISO Final Approval Mot. 2.  A list of Class Members who have opted out of the settlement can be found in Exhibit A to this order.  Forty-one Class Members, some of whom have also opted out of the settlement, have timely objected.  Reply ISO Final Approval Mot. 3.

Given the high claim rate and the low opt-out and objection rates, this factor strongly favors final approval.  *See Churchill Vill.*, 361 F.3d at 577 (finding no abuse of discretion where district court, among other things, reviewed list of 500 opt-outs in a class of 90,000 Class Members); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Chun-Hoon*, 716 F. Supp. 2d at 852 (granting final approval of settlement where 16 out of 329 class members (4.86%) requested exclusion). That nearly 40 percent of Class Members have availed themselves of the option to receive a free inspection and, if necessary, a repair, also supports final approval.  *See In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal. 2015) (approving class action settlement with claim rate of approximately 25–30%); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving class action settlement with 3% claim rate).

Nonetheless, the Court recognizes that not all—albeit a small percentage—of Class Members are entirely satisfied with the settlement.  "[I]t is the nature of a settlement, as a highly negotiated compromise . . . that it may be unavoidable that some class members will always be happier with a given result than others."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  The Court addresses those objections below.

### a.  Timing and Mileage Limitations of the Extended Warranty

The most common objection is that the settlement does not cover repairs far enough into the future.[3]  One objector expresses concerns that future repairs will not be covered at all, while the remainder contend that the extended warranty is insufficient.  For example, Vincent Preston

---

[3] Objections from or on behalf of David Bourne, Michael Canceliere, Robert & Lorelei Chaplin, Don Clarke, Louis Curcio, James Dirago, John Dragone, Robert & Donna Farr, Christina & Keith Floyd, Greg Geisert, Jeff Klotz, Arnold Levey, Roger Love, Velma Inez Miles, Dennis Miller, Robert Neeley, Mitchell Pitkoff, Vincent Preston, Rachel Ray, Hilda Rudder, Greg Shaw, and Philip Storace.  *See* Objections, ECF 78-1.

United States District Court
Northern District of California

writes:

> The warranty extension is insufficient.  The 10 years is no extension for new car owners, like myself, since the car was warranted for 10 years when purchased.  The mileage extension is only 20,000 miles to 120,000 miles which is ridiculous for a car that could be serviceable for 200,000 miles or more.  Thus, if this design flaw causes a failure at 121,000 miles, the owner is liable for all repair costs which are quite high.

Objections 71.  Class Counsel responds, however, that the settlement does offer protections for these consumers.  Reply ISO Final Approval Mot. 3.  Under the settlement, regardless of the current mileage count of the Class Vehicle, Class Members are entitled to receive a free inspection.  Settlement Agreement § II.A.I.  If any engine is found to suffer from the defect at issue in the case, that Class Member will receive a free repair.  Accordingly, the extended warranty is not the primary mechanism for ensuring that consumers are not required to pay to repair their engines; it is merely an added remedy—if a Class Member does not elect to participate in the inspection program and later suffers engine failure, he or she may avail himself or herself of the extended warranty.  Reply ISO Final Approval Mot. 3–4.

Moreover, in addition to extending the length of the warranty for engine repairs, the settlement improves the scope of warranty coverage:  Under the settlement, warranty repairs can no longer be denied on improper maintenance grounds, with the only exception being cases of "exceptional neglect."  Settlement Agreement § II.A.6.  And, any past repair expenses denied on improper maintenance grounds can be recouped through the settlement.  *Id.* § II.C.4.

Finally, at the hearing, Class Counsel explained that the underlying data in the case shows that the engine failures at issue most commonly occur before 100,000 miles.  Hr'g Tr. 12:8–17.

In sum, although the settlement extends the warranty to 10 years or 120,000 miles, whichever comes first, the Court agrees that holding off on settlement in the hopes of receiving a longer extended warranty would not be in the best interests of the class as a whole.  Accordingly, the Court OVERRULES these objections.

### b.  Continued Safety Concerns

Another common concern is that Sonata vehicles may still suffer from dangerous engine

United States District Court
Northern District of California

13

1    seizures.[4]  For example, Louis Curcio writes:

2
3               This settlement provides me no satisfaction that my car engine
              won't one day just seize, while I am driving on the highway at 75
              mph.  This could easily end in death or serious, debilitating injury. .
4             . . I am now afraid to drive my car, have my wife or son drive my
              car, or have anyone as passengers in my car.  I am even afraid to
              trade it in on a new lease for fear that someone who purchases the
5             vehicle in the future may become victim to this faulty engine.

6    Objections 19.  Despite this concern, the recall and free-inspection program addresses any

7    potential safety issues by taking defective engines off the road before they can fail.  According to

8    Class Counsel, the National Highway Traffic Safety Administration ("NHTSA") has approved the

9    inspection protocol.  Moreover, there is no evidence to suggest that the inspection protocol will be

10   ineffective.  *See Nguyen v. BMW of N. Am. LLC*, No. C 10-02257, 2012 WL 1677054, at *2 (N.D.

11   Cal. Apr. 20, 2012) (overruling objections to settlement where "[t]he objectors point[ed] to no

12   evidence that . . . indicate[d] ongoing defects").

13          In light of the proactive inspection program, NHTSA's approval of the inspection protocol,

14   and the lack of evidence demonstrating that the inspection protocol is insufficient, the Court

15   OVERRULES these objections.

16                          **c.   Lost Resale Value**

17          A third complaint raised by several of the objectors is that they are not receiving a cash

18   payment for loss of resale value.[5]  For example, James Robinson writes:

19               All Hyundai owners should be given a cash settlement or a buyback.
20             . . .  My car has now been tainted and will always be known as a
              "suspect car" because of the unreliable engine.  . . .  When I go to
21             trade it for another car, all automotive sales people will know that
              this car's engine can fail.  I will then be given a lesser amount for
22             my car because of this fact.

23   Objections 87.

24

25   _____
     [4] Objections from or on behalf of Richard Bartha, Melvin Bultman, Louis Curcio, Christina &
26   Keith Floyd, Randy Hernandez, Addie Marie Jenkins, Doreen Jodoin, Paralee Massie-Armstrong,
     Velma Miles,  Robert Neeley, Mitchell Pitkoff, Vincent Preston, Stephanie Roberts, Hilda Rudder,
27   and Mark Sullivan.  *See* Objections, ECF 78-1.
     [5] Objections from or on behalf of Melvin Bultman, Louis Curcio, James Dirago, Randy
28   Hernandez, Addie Marie Jenkins, Arnold Levey, Paralee Massie-Armstrong, Mitchell Pitkoff,
     Vincent Preston, Craig Rabinowitz, James Robinson, Karen Starr-Brady, and James Ventura.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The settlement considers these concerns in two ways.  First, if a Sonata owner suffered an

2  engine failure, could not afford to repair the car, and sold it at a loss, he or she can seek

3  reimbursement for the loss in fair-market value caused by the engine defect.[6]  Settlement

4  Agreement § II.D.3.  Second, Class Members who have never suffered an engine failure are now

5  receiving free inspections and there is no evidence that they will suffer a loss in value when and if

6  they later resell their vehicles.  Accordingly, the Court finds that as currently constructed, it is in

7  the Class's best interests to accept the offer, and thus OVERRULES these objections.

8  **d.  Additional Compensation**

9  Other class members object to the settlement because although it offers reimbursement for

10  prior repairs, rental car expenses, and towing expenses, it does not go far enough in reimbursing

11  related expenses and costs, such as the cost of previously purchased extended warranties,

12  aggravation, lost wages, and the cost associated with buying a new car.[7]

13  With respect to reimbursing the cost of previously purchased extended warranties, which

14  several objectors raise, Class Counsel explained at the fairness hearing that the negotiated

15  warranty under the settlement focuses on a very specific thing and provides the aforementioned

16  appeals process.  Hr'g Tr. 16:4–11.  Thus, the previously purchased extended warranties are far

17  broader than the extended warranty negotiated under the settlement and thus, there is still

18  significant value in the purchased extended warranties.  *Id.* 16:17–20.  Accordingly, the Court

19  OVERRULES the objections on this ground.

20  As to the remainder of the objectors requesting additional compensation, the Court finds

21  that a class settlement is not capable of resolving every possible consequential damages claim a

22  Class Member might wish to pursue.  It would not be fair to the class as a whole to set aside an

23

24  [6] To qualify under this provision, a Class Member must have sold or traded in their un-repaired
25  Class Vehicle before the recall was announced for 2011–2012 models or before the settlement was announced for 2013–2014 models.  Three Class Members—Katherine Boutin, Paralee Massie-Armstrong, and Richard Prigge—object to the time limitation.  *See* Objections 5–6, 49; Prigge
26  Objection, ECF 78-2.  However, once the recall or settlement was announced, there is no reason to discount the estimated fair-market value of the vehicle because the Class Member could either
27  obtain a free engine repair prior to selling it or sell the vehicle with the assurance that a free engine repair was available.  Therefore, the Court OVERRULES these objections.
28  [7] Objections from or on behalf of Yolanda Ashley, Michele Brown, Doreen Jodoin, Paralee Massie-Armstrong, Samantha Raffield, and James Ventura.

15

1    otherwise fair settlement because it does not address unique and difficult to prove hardships

2    suffered by only a few members of the class.  *See Hendricks v. Starkist Co.*, No. 13-cv-00729,

3    2016 WL 5462423, at *6 (N.D. Cal. Sept. 29, 2016) ("That a more favorable result for some Class

4    Members could potentially have been reached is not a sufficient reason to reject an otherwise fair

5    and reasonable settlement.").  Accordingly, the Court OVERRULES these objections as well.

6                                    **e.  Other Objections**

7            Other objections raised by only one Class Member are addressed below.

8            Mark Farrell objects because he believes his 2011 Santa Fe vehicle suffered from the same

9    defect and should therefore be included in the settlement along with Hyundai Sonatas.  Objections

10   26–27.  However, because the settlement will not release any claims Mr. Farrell may have

11   regarding this vehicle, Mr. Farrell lacks standing to raise this objection.  *In re Volkswagen "Clean*

12   *Diesel" Marketing, Sales Practices & Prods. Liab. Litig.*, No. MDL 2672, 2016 WL 6248426, at

13   *22 (N.D. Cal. Oct. 25, 2016) (citation omitted) (finding owners lacked standing to object based

14   on the settlement's failure to include certain vehicles in the class).  Accordingly, the Court

15   OVERRULES Mr. Farrell's objection.

16           Dmitriy Pavlov objects because he believes the settlement should include 2011–2014

17   Hyundai Sonata with rebuilt salvage titles, except where the engine was damaged in an accident.

18   Objections 59.  Mr. Pavlov's objection appears to be based on a misunderstanding, as those

19   vehicles do fall within the definition of "Class Vehicles" and are eligible for free inspections and

20   repairs (as needed), as well as for reimbursements for qualifying repairs.  Settlement Agreement

21   §§ II.A.1, II.C.1.  Accordingly, the Court OVERRULES Mr. Pavlov's objection.

22           Jason Pence objects on the belief that his claim was incorrectly denied.  Objections 60–68.

23   Mr. Pence states that he has appealed Hyundai's initial determination as required by the

24   settlement, but objects to preserve his rights.  Class Counsel believes that Mr. Pence's claim was

25   wrongly denied, and expects that this wrong will be remedied once Mr. Pence avails himself of the

26   process provided for challenging claim determinations.  Final Approval Mot. 7.  Class Counsel

27   further states that Mr. Pence's experience does not appear to be typical.  Because it appears that

28   Mr. Pence's objection can be resolved pursuant to the settlement and is not typical of the class, the

United States District Court
Northern District of California

16

1    Court OVERRULES his objection.

2          Finally, Arnold Levey objects on three grounds.  First, Mr. Levey argues that the recall is

3    "past consideration," and that the class gains nothing from the settlement.  Objections 44.  He

4    analogizes to an objection filed by Judge Kozinski and his wife in *Klee v. Nissan North America,*

5    *Inc.*, No. CV1208238AWTPJWX, 2015 WL 4538426 (C.D. Cal. July 7, 2015).  However, here,

6    unlike in *Klee*, the settlement includes substantial relief that Hyundai will not be obligated to

7    provide if the Court denies settlement approval.  *Cf. id.* (objecting because the initial settlement

8    consisted solely of relief Nissan had agreed to provide regardless of whether the settlement was

9    approved).  Accordingly, the Court finds this objection meritless and thus OVERRULES it.

10         Second, Mr. Levey objects to the form of the class notice.  He claims that the class notice

11   "was defective and did not provide sufficient information for enough of the class members to

12   realize how little they would receive as a result of the settlement."  Objections 45.  However, for

13   the reasons described above, in Part II.C., the Court finds the notice adequate and OVERRULES

14   this objection.

15         Third, Mr. Levey objects to the requested attorneys' fees, stating that the amount of fees

16   requested are "clearly excessive and unwarranted."  Objections 43.  As explained below in III.B.,

17   the Court finds the attorneys' fees reasonable, and thus OVERRULES Mr. Levey's third

18   objection.

19   **E.    The *Bluetooth* Factors**

20         Although the *Churchill* factors favor settlement, consideration of those factors alone is

21   insufficient.  *See In re Bluetooth*, 654 F.3d at 946.  Where, as here, the parties reach a settlement

22   prior to class certification, courts must examine the settlement with "an even higher level of

23   scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under

24   Rule 23(e) before securing the court's approval as fair."  *Id.* (citations omitted).  "Collusion may

25   not always be evident on the face of a settlement, and courts therefore must be particularly vigilant

26   not only for explicit collusion, but also for more subtle signs that class counsel have allowed

27   pursuit of their own self-interests and that of certain class members to infect the negotiations."  *Id.*

28   at 947.  Signs of subtle collusion include:

United States District Court
Northern District of California

17

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotations marks and citations omitted).

Here, neither the process used by the parties to negotiate the settlement nor the settlement's terms indicate a collusive deal. The first factor is not present—while the Class receives all of the recovery Plaintiffs requested, attorneys' fees will not exceed $795,000 for both fees and expenses. Mot. for Att'y Fees 2. This amount represents less than 10 percent of the value of the settlement at present. *See* Hr'g Tr. 4:20–21 (Hyundai has paid approximately $8.58 million in compensation to 2,883 Class Members); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (finding that the Ninth Circuit sets a "benchmark" fee award at 25% of the recovery obtained).

As to the second factor, the settlement agreement contains a clear sailing provision. The agreement states Defendants will not "oppose, undermine, or solicit others to oppose or undermine an award of attorneys' fees and costs up to, but not to exceed, the total combined sum of $795,000.00." Settlement Agreement § V.2 "Although clear sailing provisions are not prohibited, they 'by [their] nature deprive . . . the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *In re Bluetooth*, 654 F.2d at 949 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). When "confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* at 948 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

However, the award represents the amount of time and expense counsel actually devoted to

1     the litigation.  Gibbs Decl. ¶ 11.  And, had the fee amount been litigated rather than negotiated, a

2     multiplier could have been awarded and the fees substantially higher.  *See, e.g.*, *MacDonald v.*

3     *Ford Motor Co.*, No. 13-cv-2988, 2016 WL 3055643, at *9–10 (N.D. Cal. May 31, 2016)

4     (awarding fee multiplier of 2.0).  The parties' fee agreement thus represents a legitimate

5     compromise and not a collusive agreement to pay Class Counsel more in exchange for paying the

6     class less.  *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016)

7     (clear-sailing provision does not signal collusion when the agreed-upon fees are reasonable and

8     the relief negotiated for the class is favorable).

9          As to the third factor, there is no kicker arrangement whereby "unpaid attorneys' fees"

10    would revert to the defendant.  *In re Bluetooth*, 654 F.3d at 949.

11         Two additional facts suggest that the settlement was not a result of collusion.  First, the

12    settlement was negotiated by counsel with extensive experience litigating automotive class actions

13    and was aided by the presence of a mediator, Hon. James P. Kleinberg (Ret.).  Gibbs Decl. ¶¶ 7,

14    10–11; *see G.F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 ("[T]he assistance of an

15    experienced mediator in the settlement process confirms that the settlement is non-collusive."

16    (citation and internal quotation marks omitted)).  Second, under the settlement, Plaintiffs are

17    receiving all of their requested relief, which strongly suggests that the settlement is non-collusive.

18    *See Tadepalli v. Uber Techs., Inc.*, No. 15-cv-4348, 2016 WL 1622881, at *9 (N.D. Cal. Apr. 25,

19    2016) ("[T]he fact that the class is receiving 100% [recovery] reduces the likelihood that the

20    parties colluded to confer benefits on each other at the expense of class members.").

21         Similarly, the $2,500 service awards that Hyundai has agreed to award Plaintiffs Mendoza

22    and Graham are not indicative of a collusive deal, as they are lower than "typical incentive awards

23    in the Ninth Circuit, where $5,000 is presumptively reasonable."  *Smith v. Am. Greetings Corp.*,

24    No. 14-cv-2577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

25         Accordingly, the Court concludes that the settlement does not raise an inference of

26    collusion that warrants invalidation of the class settlement as a whole.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   ATTORNEYS' FEES AND COSTS

#### A.   Legal Standard

##### i.   Attorneys' Fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.  "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942.

##### ii.   Costs

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citation omitted).  To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-

1   cv-5778, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-5778,

2   2011 WL 1838562 (N.D. Cal. May 13, 2011).

3       **B.**    **Analysis**

4           **i.**    **Attorneys' Fees**

5         Class Counsel moves the Court for $761,415.67 in attorneys' fees, representing less than

6   10 percent of the settlement amount as of December 15, 2016.  Mot. for Att'y Fees 2.  Class

7   Counsel argues that this award is reasonable because they have spent 1,962 hours over the past

8   year and a half working on behalf of the class, which, at the current hourly billing rates, amounts

9   to a lodestar value of $882,201.  *Id.*  Thus, the fee Hyundai has agreed to pay includes an effective

10  multiplier of 0.86.  *Id.*  Moreover, this multiplier will decrease further as Class Counsel continues

11  to fulfil their post-settlement obligations to the class.  *Id.*  Finally, Class Counsel argues that in

12  light of the contingency risk they undertook and the positive results they achieved, the amount of

13  attorneys' fees and expenses is reasonable.  *Id.*

14        After careful review of Class Counsel's declarations and filings, the Court concludes that

15  awarding $761,415.67 in attorneys' fees and costs to Class Counsel is reasonable.  First, the award

16  requested is far less than the 25 percent "benchmark" for a reasonable fee award in the Ninth

17  Circuit.  *See In re Bluetooth*, 654 F.3d at 942.  Such a fee award is "presumptively reasonable."

18  *Ching v. Siemens Indus., Inc.*, No. 11-cv-4838, 2014 WL 2926210, at *7 (N.D. Cal. June 27,

19  2014) (citing *In re Bluetooth*, 654 F.3d at 942).  Although one class member has objected to the

20  proposed fee award, the Court finds the use of a fractional multiplier to be reasonable.

21        The Court has also crosschecked this award against the lodestar recovery.  Class Counsel

22  calculated the anticipated lodestar as $882,201,[8] which, as previously stated, would result in a

23  multiplier of approximately 0.86.  This amount is less than the range of multipliers routinely

24  awarded by courts.  *See In re Omnivision*, 559 F. Supp. 2d at 1048 (noting that courts have

25  approved multipliers raging between 1 and 4); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d

26

27  [8] This figure is supported by the declarations of Eric Gibbs, Benjamin F. Johns, and Richard D.
28  McCune.  Gibbs. Decl. ISO Mot. for Att'y Fees ("Gibbs Decl. II"), ECF 74-1; Johns Decl. ISO
    Mot. for Att'y Fees ("Johns Decl."), ECF 74-3; McCune Decl. ISO Mot. for Att'y Fees ("McCune
    Decl."), ECF 74-5.

United States District Court
Northern District of California

1   1043, 1051 n.6 (noting that the majority of class action settlements approved had fee multipliers

2   that ranged between 1.5 and 3).  Additionally, the number of hours expended falls below the range

3   of hours previously found by courts to be reasonable in similar cases.  *See, e.g.*, *Sadowska v.*

4   *Volkswagen Grp. Of Am.*, No. CV 11-665, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013)

5   (approving attorneys' fees based on 3,115 hours over 23 months of litigation).

6          Finally, Class Counsel is entitled to an award of attorneys' fees under two California fee-

7   shifting statutes, the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §

8   1780(e), and California's codification of the private attorney general doctrine, Cal. Civ. Proc.

9   Code § 1021.5.  CLRA provides for an award of attorneys' fees to a prevailing plaintiff in an

10  action like this brought pursuant to the CLRA.  Cal. Civ. Code § 1780(e).  Similarly, section

11  1021.5 of the California Code of Civil Procedure provides for attorneys' fees to a successful party

12  who confers a significant benefit on the general public of a large class of persons.  Under this

13  section, it does not matter that Plaintiffs succeeded through a settlement rather than through a

14  judgment following trial, it only matters that they succeeded.  *See Graham v. DaimlerChrysler*

15  *Corp.*, 34 Cal. 4th 553, 566 (2004) ("In determining whether a plaintiff is a successful party for

16  purposes of section 1021.5, the critical fact is the impact of the action, not the manner of the

17  resolution." (citation and internal quotation marks omitted)).

18          Accordingly, Class Counsel's motion for $761,415.67 in attorneys' fees is GRANTED.

19          **ii.    Costs**

20          Plaintiffs are also seeking reimbursement of $33,584.33 in costs.  Gibbs Decl. II ¶ 18;

21  Johns Decl. ¶ 10; McCune Decl. ¶ 37.  Class Counsel has provided itemized lists of the costs and

22  expenses separated by category.  Gibbs Decl. II ¶ 18; Johns Decl. ¶ 10; McCune Decl. ¶ 37.  Most

23  of the expenses resulted from expert consultants, litigation support and professional services, and

24  travel.  *Id.*  Upon review, the expenses are reasonable with the exception of the $8,343 classified

25  as "other" by Chimicles & Tikellis LLP.  *See* Johns Decl. ¶ 10.  Because Mr. Johns has not

26  provided sufficient information for the Court to assess whether these expenses are reasonable, the

27  Court declines to award those costs.  Accordingly, Class Counsel's motion for $33,584.33 in costs

28  is GRANTED IN PART.  The Court awards Class Counsel $25,241.33 in costs.

United States District Court
Northern District of California

United States District Court
Northern District of California

## IV.   SERVICE AWARD

### A.   Legal Standard

Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citation omitted).  Courts evaluate service awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (citation and internal quotations and alterations omitted).  Indeed, "courts must be vigilant in scrutinizing all inventive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

### B.   Analysis

Plaintiffs request a service award of $2,500 each for Lead Plaintiffs Mendoza and Graham. Mot. for Att'y Fees 2.  Plaintiffs believe this award is reasonable in light of the contributions that Plaintiffs have made on behalf of similarly-situated Sonata owners.  *Id.*  Specifically, Mendoza and Graham worked with counsel to present their individual experiences on behalf of the class, searched for and provided documentation to support their claims, reviewed the complaint prior to filing, consulted with Class Counsel regarding potential settlement remedies, and reviewed the settlement agreement on behalf of the class.  *Id.*; Gibbs Decl. II ¶ 19.  No one has objected to the proposed service award.

To determine the reasonableness of a service award, courts consider the proportionality between the service award and the range of class members' settlement awards.  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014).  In this Circuit, an award of $5,000 is presumptively reasonable.  *See Harris v. Vector Marketing Corp.*, No. C-08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).  Thus, in light of Lead Plaintiffs' service to the class, the Court finds that a service award of $2,500 each is reasonable.

## V.   ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1.    The Court certifies the class for settlement purposes only.

2.    The Court grants final approval to the parties' proposed settlement, which is fair, adequate, and reasonable.

3.    The Court approves a service award of $2,500 Plaintiff Elizabeth Mendoza and Beth Graham ($5,000 collectively).

4.    The Court approves an award to class counsel of $ 761,415.67 in attorneys' fees and $25,241.33 in expenses.

5.    The 247 class members who requested to opt out of the settlement class are excluded from the class.

The Court further ORDERS the parties to submit a revised proposed final judgment consistent with this order **on or before January 30, 2017**.

**IT IS SO ORDERED.**

Dated: January 23, 2017

_____
BETH LABSON FREEMAN
United States District Judge